## COMMISSIONER OF INTERNAL REVENUE v. JOHNSON.

### No. 9186.

Circuit Court of Appeals, Sixth Circuit.

Nov. 30, 1942.

Carolyn E. Agger, Spec. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Newton K. Fox, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Ward H. Peck, of Detroit, Mich., for respondent.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

PER CURIAM.

The Commissioner of Internal Revenue determined a deficiency in the income tax of respondent, Earle F. Johnson, for the year 1935, in the amount of $31,534.38. The Board of Tax Appeals reduced this deficiency assessment to $594.47; and the Commissioner has petitioned this court for review.

The sole question to be determined is whether the respondent taxpayer received, within the purview of Section 115(c) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, page 703,[1] a distribution in liquidation of the Great Miami Realty Corporation, an Ohio corporation in which he was a stockholder. If respondent received a liquidating dividend, his loss of his investment in the stock of the corporation is limited to the extent provided in Section 117(d) of the Revenue Act of 1934, 26 U.S. C.A. Int.Rev.Acts, page 708.[2] Otherwise, his total loss on his stock investment is deductible as an ordinary loss in 1935.

Respondent subscribed to $100,000 par value of the capital stock of the Great Miami Realty Corporation, but did not pay up the full amount of his stock subscription and was issued shares for the stock for which he paid. Three other subscribers to the stock pursued the same course, while the remaining three stockholders paid for and received all the shares for which they had subscribed.

[1] "§ 115. Distributions by Corporations. * * * (c) Distributions in Liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117(a), 100 per centum of the gain so recognized shall be taken into account in computing net income. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation."

[2] "§ 117. Capital Gains and Losses. * * * (d) Limitation on Capital Losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges."

Some six years after respondent subscribed for his shares, the stockholders unanimously authorized the officers to dissolve the corporation; a liquidator was appointed; and a certificate of dissolution of the corporation was filed with the Secretary of State of Ohio in June, 1935. The liquidator settled in full with all mortgage creditors by conveying to them all the corporation's real estate and assigning to them all outstanding contracts.

The corporation had only a small cash balance at the time of its dissolution. The accounts receivable were insufficient to pay the general indebtedness of the corporation and the expenses incident to its liquidation. The liquidator paid all these debts and expenses by making a call on those subscribers to the capital stock, including respondent, who had not paid their subscriptions in full. These calls were met by the respondent and the other stockholders in his group.

On December 6, 1935, a distribution of approximately ten percent was made by the liquidator to those stockholders who had paid their stock subscriptions in full. The funds with which they were paid were furnished from collections made by the liquidator from those shareholders, including respondent, who had not paid in the full amount of their stock subscriptions. A final payment was made by respondent to the liquidator on November 20, 1935; and respondent was released and discharged from further liability on his stock subscription agreement.

The findings of fact of the Board of Tax Appeals, recounting the transactions in greater detail, may be found in 43 B.T.A. 960.

The respondent received no money, property, or physical assets from the liquidation of the corporation. On his income tax return for the year 1935, he deducted as an ordinary loss the sum of $73,854.45, which represented his loss on his investment in the stock of the corporation. The Commissioner of Internal Revenue disallowed the deduction and treated the loss as sustained by respondent on the liquidation of the corporation within the purview of Section 115(c) of the Revenue Act of 1934.

The Board of Tax Appeals, with one member dissenting, reversed the ruling of the Commissioner. In the majority opinion, the Board said: "Petitioner received nothing in exchange for the additional payments on his stock subscription. The payments were made in order that debts could be cleared, fully paid shareholders placed on an equal basis and liquidation expenses met. The total amount paid by petitioner was the cost of his investment. The release from the remainder of his subscription liability by the liquidator was 'nothing of exchangeable value.' The fact that petitioner received nothing in liquidation distinguishes this case from cases such as White v. United States, 305 U.S. 281 [59 S.Ct. 179, 83 L.Ed. 172]; Helvering v. [Chester N.] Weaver Co., 305 U.S. 293 [59 S.Ct 185, 83 L.Ed. 180], and similar cases. We are of the opinion that no amount was distributed to petitioner in liquidation of The Great Miami Realty Corporation within the meaning of Section 115(c) of the Revenue Act of 1934."

In our judgment, the Board of Tax Appeals reached the right result, upon sound reasoning. Accordingly, the order of the Board is affirmed.