ESTATE OF EDWARD T. BEDFORD, TITLE GUARANTEE AND TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107302. Promulgated January 26, 1943.

*H. S. McKinney, Esq.*, for the petitioner.
*H. C. Clark, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* The Commissioner determined an income tax deficiency for the calendar year 1937 in the amount of $13,887.24. The sole issue is whether cash of $45,240 received by petitioner pursuant to a

plan of recapitalization is taxable as a dividend, as determined by respondent, or as capital gain to the extent of 40 percent thereof, as reported by petitioner. The material facts are stipulated and may be briefly summarized.

Petitioner is the executor of the estate of Edward T. Bedford, who died May 21, 1931. Its income tax return for 1937 was filed with the collector for the second district of New York.

In 1937 petitioner owned 3,000 shares of 7 percent cumulative preferred stock of the Abercrombie & Fitch Co., having a par value of $100 per share. The stock had been owned by Bedford at the time of his death and at that time it had a fair market value of $210,000. In accordance with a plan of recapitalization duly approved by the directors and stockholders of the Abercrombie & Fitch Co., petitioner in January 1937 exchanged its 3,000 shares of 7 percent cumulative preferred stock for 3,500 shares of $6 cumulative preferred stock with a par value of $75, 1,500 shares of common stock, and cash in the amount of $45,240. The fair market value of the securities and cash received by petitioner under said plan was $349,740. The number of shares of 7 percent cumulative preferred stock outstanding at the time of the recapitalization was 17,973. The cash payable to the holders of such shares upon the exchange was at the rate of $15.08 per share, or a total on the outstanding shares of $271,032.84.

On January 31, 1936, the surplus account on the books of the Abercrombie & Fitch Co., showed a deficit of $399,771.87, after the deduction of three stock dividends. There had been charged to surplus account the following amounts upon the issuance of stock dividends: $161,700 on April 30, 1920, upon the issuance of a common stock dividend paid in common stock; and the amounts of $323,400 and $359,000 upon the issuance on February 20, 1928, and January 21, 1930, respectively, of common stock dividends paid in preferred stock. The company's surplus account on January 1, 1913, had a balance of $8,170.25. For its fiscal year ended January 31, 1937, the company had net earnings of $309,073.70 after taxes.

The parties are agreed that the exchange of stock for stock pursuant to the plan of recapitalization was a nontaxable transaction under section 112 (b) (3) of the Revenue Act of 1936. Petitioner concedes that gain in excess of the amount of cash received was realized upon the exchange and that, therefore, the cash is to be "recognized" as taxable gain under the provisions of section 112 (c) as "other property or money." It maintains, however, that subdivision (1) of section 112 (c) governs; that consequently the recognized gain is taxable as a capital gain, limited by the provisions of section 117 (a). Respondent takes the view, and has so determined, that the distribution of the cash had "the effect of the distribution of a taxable dividend," and as such is to be taxed as a dividend under the plain language of

subdivision (2) of section 112 (c). The material provisions of the statute are set forth below.[1]

Petitioner has failed to demonstrate any error in the Commissioner's determination. Its principal position is that the cash distributed did not have the effect of a taxable dividend because the distributing corporation had no earnings or profits accumulated since February 28, 1913, with which to pay dividends. While it is true that the books showed a deficit on January 31, 1936, of nearly $400,000, it is undisputed that the amount of $844,100 had been charged to earnings upon the issuance of stock dividends in prior years. Since these dividends were tax-free, the first one under the rule of *Eisner* v. *Macomber*, 252 U. S. 189, and the last two under the revenue act in force when they were made,[2] they do not serve to reduce earnings and profits available for future distribution. There were thus earnings and profits in January 1937 greatly in excess of the cash payment connected with the recapitalization.

Petitioner argues with respect to two of the stock dividends, which took the form of preferred stock on common stock, that the distributions constituted income under the Sixteenth Amendment, *Koshland* v. *Helvering*, 298 U. S. 441, *Helvering* v. *Gowran*, 302 U. S. 238, and that, therefore, they were distributions of earnings and profits even though the revenue act then in force saw fit to exempt them from tax. This argument completely overlooks section 115 (h) of the Revenue Act of 1936, which provides as follows:

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\*     \*     \*     \*     \*     \*     \*

(h) EFFECT ON EARNINGS AND PROFITS OF DISTRIBUTIONS OF STOCK.—The distribution (whether before January 1, 1936, or on or after such date) to a distributee by or on behalf of a corporation of its stock or securities or stock or securities

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\*     \*     \*     \*     \*     \*     \*

(b) EXCHANGES SOLELY IN KIND.—

\*     \*     \*     \*     \*     \*     \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

[2] Revenue Act of 1928, sec. 115 (f) :

"(f) STOCK DIVIDENDS.—A stock dividend shall not be subject to tax."

in another corporation shall not be considered a distribution of earnings or profits of any corporation—

(1) if no gain to such distributee from the receipt of such stock or securities was recognized by law, or

(2) if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or because exempt to him under section 115 (f) of the Revenue Act of 1934 or a corresponding provision of a prior Revenue Act.

This section is merely an enactment of what the law had been for many years prior to 1936. Senate Rept. 2156, 74th Cong., 2d sess., p. 19; *August Horrmann*, 34 B. T. A. 1178, 1184; *F. J. Young Corporation*, 35 B. T. A. 860; affd., 103 Fed. (2d) 137; Mertens Law of Federal Income Taxation, vol. 1, § 9.47; *John K. Bretta*, 1 T. C. 86.

Petitioner also appears to argue that there was a mere exchange pursuant to a plan of recapitalization and that cash distributed in an exchange can not be treated as a dividend, citing *Humphryes Manufacturing Co.*, 45 B. T. A. 114. But section 112 (c) (2) applies by its terms not to distributions which take the form of a dividend, but to any distribution which has the *effect* of the distribution of a taxable dividend. It contemplates the very situation under consideration, for it is applicable only if a distribution falls first within section 112 (c) (1), and a transaction falls within that subdivision only if it is part of "an exchange * * * within the provisions of subsection (b) (1), (2), (3), or (5) of this section." In other words, the statute itself requires that a distribution of cash or property in connection with an exchange of stock for stock be taxed as a dividend if it has that effect.[3] We think the distribution under consideration clearly falls within section 112 (c) (2). *Love* v. *Commissioner*, 113 Fed. (2d) 236; *J. T. Owens*, 27 B. T. A. 469, 474; affd., 69 Fed. (2d) 597. The case relied upon by petitioner, *Humphryes Manufacturing Co.*, *supra*, was decided on a failure of proof. It fol-

---

[3] Section 112 (c) (2) had its origin in section 203 (d) (2) of the 1924 Act. Its purpose, as stated in House Report 179, 68th Cong., 1st sess., pp. 14, 15, is as follows :

"(2) There is no provision of the existing law which corresponds to paragraph (2) of subdivision (d). This subdivision provides that any amount distributed by a corporation in connection with a reorganization which has the effect of a taxable dividend shall be taxed as a dividend and not as a taxable gain.

"The necessity for this provision may best be shown by an example : Corporation A has capital stock of $100,000, and earnings and profits accumulated since March 1, 1913, of $50,000. If it distributes the $50,000 as a dividend to its stockholders, the amount distributed will be taxed at the full surtax rates.

"On the other hand, Corporation A may organize Corporation B, to which it transfers all its assets, the consideration for the transfer being the issuance by B of all its stock and $50,000 in cash to the stockholders of Corporation A in exchange for their stock in Corporation A. Under the existing law, the $50,000 distributed with the stock of Corporation B would be taxed, not as a dividend, but as a capital gain, subject only to 12½ per cent rate. The effect of such a distribution is obviously the same as if the corporation had declared out as a dividend its $50,000 earnings and profits. If dividends are to be subject to the full surtax rates, then such an amount so distributed should also be subject to the surtax rates and not to the 12½ per cent rate on capital gain. Here again this provision prevents evasions."

lowed *J. Weingarten, Inc.*, 44 B. T. A. 798, 809, which recognized that cash distributed under similar circumstances had the effect of the distribution of a dividend. To the same effect is the more recent case of *Knapp Monarch Co.*, 1 T. C. 59.

Petitioner's final argument, as we understand it, is that the cash payment should not be treated as a dividend, because the company had a book deficit and was thereby prohibited by state law from declaring dividends. Petitioner contends that an ordinary dividend would not and could not be declared, and it is urged that it would be improper to regard a distribution made in connection with a reorganization as a dividend when under state law a dividend could not legally be declared. The answer to this argument is plain. The revenue act has its own definition of a dividend. The corporation, for purposes of Federal income taxation, had a substantial surplus rather than a deficit; any distribution by a corporation having earnings or profits is presumed by section 115 (b), for the purposes of Federal income taxation, to have been out of those earnings or profits; and any such distribution is declared by section 115 (a) to be a dividend. In the instant case the corporation had a surplus in the eyes of the revenue act and there was a distribution of cash among its shareholders. The distribution did not take the form of an ordinary dividend, governed by section 115 (a) and (b), but its effect was precisely the same. It, therefore, falls within the express and unambiguous language of section 112 (c) (2).

The Commissioner is sustained in his determination.

*Decision will be entered for respondent.*