Louise H. Edwards et al. [1] v. Commissioner. Edwards v. Commissioner
Docket Nos. 24909-24914.
United States Tax Court
T.C. Memo 1955-263; 1955 Tax Ct. Memo LEXIS 76; 14 T.C.M. (CCH) 1046; T.C.M. (RIA) 55263; September 27, 1955
*76 George W. Ericksen, Esq., for the petitioner. Hugh F. Culverhouse, Esq., for the respondent. TURNER Supplemental Memorandum Opinion TURNER, Judge: In their Rule 50 computations, made pursuant to the Memorandum Findings of Fact and Opinion entered herein, the parties are in accord as to the amount of the Dixie Groves Company excess profits net income for its final tax period, but they are not in agreement as to adjustments thereto under section 711 of the Internal Revenue Code of 1939, nor as to the computation of the excess profits tax thereon. The respondent, in keeping with his determination that the final tax period of the company ended November 10, 1945, has placed the excess profits net income for the final period on an annual basis, pursuant to the requirements of section 711(a)(3)(A). [2] On the other hand, the petitioners have computed the excess profits tax of the Dixie Groves Company for its final tax period under section 710(a)(7) of the Code, [3] on the basis of a final tax period ended June 6, 1946, with the result that in their computations a pro rata part of the final period excess profits net income is attributed to the period from January 1, 1946, to *77 June 6, 1946, and accordingly shown as not subject to excess profits tax. *78 In section 711(a)(3)(A), it is provided that if the taxable year is a short taxable year, namely, a period of less than twelve months, the excess profits net income is to be placed on an annual basis by multiplying the amount thereof by the number of days in the twelve months ending with the close of the short taxable year and dividing by the number of days in such short year, and the tax is that part of such annualized income as the number of days in the short taxable year is of the number of days in the said twelve months. In section 35.711(a)-4 of Regulations 112, the regulations pertinent hereto, it is provided that "If * * * the period from the beginning" of the last accounting period of a corporation "to the date it ceases operations and is dissolved, retaining no assets, is a period of less than 12 months, such period is a short taxable year." In keeping with that regulation, the rule now seems to be well settled that when a corporation has ceased all operations, has disposed of all of its assets and is an existing corporation only legalistically, it has been de facto dissolved and the date of such de facto dissolution is, for excess profits tax purposes, the end of its *79 final tax period. ABC Brewing Corporation v. Commissioner, 224 Fed. (2d) 483 (June 22, 1955) affirming 20 T.C. 515; Wier Long Leaf Lumber Co. v. Commissioner, 173 Fed. (2d) 549, affirming in part and reversing in part 9 T.C. 990; Winter & Co. (Indiana), 13 T.C. 108; and Kamin Chevrolet Co., 3 T.C. 1076. United States v. Kingman, 170 Fed. (2d) 408; Allegheny Broadcasting Corporation, 12 T.C. 552, affd. 179 Fed. (2d) 844; and Union Bus Terminal, Inc., 12 T.C. 197, affd. 179 Fed. (2d) 399, are not to the contrary, but are cases in which it was found and held that the facts were not such as to show de facto dissolution under the cases previously cited. Even though the final return as filed by the Dixie Groves Company was stated to be for a full fiscal year ended August 31, 1946, which date was some eighty-six days after the certificate of dissolution had been issued and the corporation had ceased to exist even legalistically, the return so filed was intended by the company as its return of its income for its final tax period, it did in fact *80 cover and encompass the final tax period, and the respondent has so treated it in his determination by basing his determination of deficiency thereon. But where the date shown as the end of the final period is beyond and outside such final period, the respondent is no more precluded or foreclosed from determining that the correct date was an earlier date than he is from determining that the taxpayer's income was other than the amount reported, and where, as in this case, the date marking the end of the final tax period is a factor in fixing the amount of the tax, he could not fulfill his duty "to determine the correct amount of the tax" if he did not make a determination of such earlier date. It is well settled, of course, that the respondent is not authorized by the statute to make a determination of a deficiency for a fractional part of a taxpayer's correct taxable period, and such a determination is, under the statute, a nullity. Columbia River Orchards, Inc., 15 T.C. 253, 260; Oklahoma Contracting Corporation, 35 B.T.A. 232; Pittsburgh & West Virginia Railway Co., 32 B.T.A. 66; Elgin Compress Co., 31 B.T.A. 273; and Premier Packing Co., 12 B.T.A. 637. *81 If, however, the period on which the respondent's determination is based covers the taxpayer's final tax period, it is a determination for that period and is not subject to the infirmity reflected and dealt with in the cases just cited. Harvey Coal Corporation, 12 T.C. 596, and Commissioner v. Forest Glen Creamery Co., 98 Fed. (2d) 968, certiorari denied 306 U.S. 639. The respondent has determined that November 10, 1945, was the date marking the end of the final tax period of the Dixie Groves Company, and under the cases cited, we are satisfied that on that date it did stand de facto dissolved since by that date it had ceased all operations, had disposed of all of its assets and was an existing corporation only legalistically. It could, of course, be argued that the de facto dissolution occurred as early as September 19, 1945, but the petitioners not only make no claim that dissolution, de facto or otherwise, occurred prior to November 10, 1945, but to the contrary, contend that dissolution within the meaning of the statute and the regulations did not occur until June 6, 1946, when the de jure existence of the corporation ended. In that connection, *82 it may be observed that an earlier date than November 10, 1945, as the end of the short taxable year would most likely result in a greater excess profits tax deficiency and be to the benefit of the respondent and not the petitioners. In light of the above, it is our opinion and we conclude that the position of the petitioners in their Rule 50 computations is not well taken and that decisions should be entered in accordance with the computations of the respondent. Decisions will be entered in accordance with the respondent's computations. Footnotes
1. Proceedings of the following petitioners are considered herewith: triple E Development Company, Docket No. 24910; W. F. Edwards, Docket No. 24911; Katherine T. Edwards, Docket No. 24912; L. C. Edwards, Jr., Docket No. 24913; and M. E. Price, Docket No. 24914.↩
2. SEC. 711. EXCESS PROFITS NET INCOME. (a) Taxable Years Beginning After December 31, 1939. - The excess profits net income for any taxable year beginning after December 31, 1939, shall be the normal-tax net income, as defined in section 13(a)(2), for such year except that the following adjustments shall be made: * * *
(3) Taxable Year Less Than Twelve Months. - (A) General Rule. - If the taxable year is a period of less than twelve months the excess profits net income for such taxable year (referred to in this paragraph as the "short taxable year") shall be placed on an annual basis by multiplying the amount thereof by the number of days in the twelve months ending with the close of the short taxable year and dividing by the number of days in the short taxable year. The tax shall be such part of the tax computed on such annual basis as the number of days in the short taxable year is of the number of days in the twelve months ending with the close of the short taxable year. ↩
3. SEC. 710. IMPOSITION OF TAX. (a) Imposition. - * * *
(7) Taxable Years Beginning in 1945 and Ending in 1946. - In the case of a taxable year beginning in 1945 and ending in 1946, the tax shall be an amount equal to that portion of a tentative tax, computed as if the law applicable to taxable years beginning January 1, 1945, were applicable to such taxable year, which the number of days in such taxable year prior to January 1, 1946, bears to the total number of days in such taxable year.↩